# Law Offices of Susan G. Kellman

25 Eighth Avenue • Brooklyn, New York 11217
(718) 783-8200 • Fax (718) 783-8226 • SGK@KELLMANESQ.COM
Fellow, American College of Trial Lawyers

June 9, 2019

<u>Via ECF, EMAIL & COURIER</u>
Hon. Fredric Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

        Re: *United States v. Mohamed Rafiq Naji*
           Docket No. 16 Cr. 653 (FB)

Dear Judge Block:

  This letter is respectfully submitted to aid your Honor in the sentencing of, Mohamed Rafik Naji, currently scheduled for June 14, 2019. Mr. Naji pleaded guilty to a single count of attempting to provide material support to a foreign terrorist organization, in violation of 18 USC §2339(a).

<u>The Law</u>

  The "matter of whether to grant a departure or a non-Guidelines sentence lies within the discretion of the sentencing judge." *United States v. Sanchez*, 517 F.3d 651, 661 (2d Cir. 2008); *United States v. Booker*, 543 U.S. 220 (2005). "Under 18 U.S.C. § 3553(a) the court is instructed to consider the traditional sentencing factors of retribution, deterrence, incapacitation, and rehabilitation, as well as the 'nature of the offense,' and the 'characteristics of the defendant,'" as set forth in 18 U.S.C §3553(a). *United States v. Rivera*, 281 F. Supp. 3d 269, 287 (E.D.N.Y. 2017).

History and Characteristics of the Defendant

The PSR does a thorough job of presenting Mr. Naji's history and personal characteristics. Additionally, personal letters of support are attached as Exhibit A. Of note, is his steady employment history in delicatessens and bodegas in NYC throughout his adult life. Additionally, the PSR confirms that he provided financially for his two households – each of which includes a wife and children – until the time of his arrest. As discussed below in greater detail, Mr. Naji's solid work ethic has been recognized at the MDC. His BOP Performance Worksheet is attached as Exhibit B.

Nature and Circumstances of the Offense

There can be no question as to the seriousness of the offense to which Mr. Naji pleaded guilty – attempting to provide material support to a designated terrorist organization. That said, Mr. Naji was born in Yemen and remains a citizen of Yemen, and virtually all of Mr. Naji's criminal activity was centered around his roots in Yemen – where Saudi Arabia has been slaughtering Yemenis for the better part of this decade. The purpose of this submission in not to try the merits of Saudi Arabia's war with Yemen; however, it cannot be denied that the war in Yemen has left its mark on many of Yemen's most vulnerable population – its children – and this reality had a lasting effect on Mr. Naji, who has three young children, currently residing with their mother, in Yemen. Photographs that provide a glimpse of the chaos that existed in Yemen during Mr. Naji's visits to his homeland, and continues to this day, are attached as Exhibit C.

The government has a number of recorded conversations in which Mr. Naji is begging his family back in the US to send him money so that he

can afford to feed and defend his family in Yemen. At the time these calls are recorded – Mr. Naji is physically located in Yemen – which we learn during the calls, is the home he visits annually, to spend time with his first wife and three children.  And, as he watches Saudi Arabia, with the support of its ally, the United States, systematically destroy the way of life for his people in Yemen – he becomes angry – and attempts to assist in any and all efforts to protect his country, his people and his young family. Clearly, his attempts included a poorly thought out desire to alighn himself with ISIS – or we wouldn't be before this Honorable Court.

So, the real question before your Honor is – does Mr. Naji's situation require that he be incapacitated for 240 months – as recommended to the Court by the PSR – and we submit that it does not. As a starting point, the Court must recognize, that Mr. Naji is, and always has been, a sincere and hard-working man – committed to providing for his family. He is a man who, without the benefit of the artificial inflated sentencing guidelines, has had no prior involvement with the criminal justice system.

Application of the Guideline Enhancements

1. Two Level Enhancement for Offense Characteristic

The base offense level for a violation and/or attempted violation of 18 USC §2339(a) is Level 26. Next, the PSR adds two levels pursuant to USSG §2M5.3(b)(1)(E), where the defendant has "intent, knowledge or reason to believe" that his support could be used to commit a violent act. Since the underlining crime is an attempt to provide material support to a terrorist organization – that seems to be self-evident. Indeed, it seems unfathomable that one could commit – or attempt to commit – an act of

terrorism without contemplating the possibility of violence. Thus, the addition of this two-level enhancement seems redundant and unnecessary. (PSR ¶ 34)

2. Terrorism Enhancement

The PSR adds twelve levels to the base offense level, pursuant to the so-called "terrorism enhancement" *and* increases Mr. Naji's Criminal History Category I to a Criminal History Category III, notwithstanding his previous lack of a criminal record. This enhancement, too, seems unwarranted, if not duplicative. If the underlying crime to which a defendant enters a guilty plea is "material support of a terrorist organization" – one must ask – how does one commit such an offense – without it being a "felony" that is "intended to promote the federal crime of terrorism"? The Guidelines calculation in this case, without benefit of the terrorism enhancement is sufficiently high – especially in the case of an individual who "attempted" to provide material support – and in fact, never actually accomplished the goal that the statute is meant to prevent.

3. Enhancement for Obstruction of Justice

The notion that one who is attempting to commit a serious felony – no matter the felony – would not seek to conceal one's actions is counter-intuitive – and the argument for adding additional levels of punishment for doing what anyone would do if they were committing a serious crime – and presumably – didn't want to be caught – they might well tell an accomplice to make sure he/she deleted Facebook entries regarding criminal conduct – to do otherwise would suggest some sort of mental imbalance. But maybe, we are now punishing people for acting normally – because that

does seem out of step with our current political milieu. (PSR ¶37)

The PSR recommends the maximum statutory sentence available to your Honor, and, its main justification is that Mr. Naji has escaped more serious sentencing by the statutory cap of twenty years. It is respectfully submitted, that perhaps the statutory maximum – raised only recently by Congress, from fifteen years to twenty years, is meant to convey the sentence that the Congress imagined for the worst perpetrators – not for individuals like Mr. Naji – who talk a good game – but accomplish nothing.

An Analysis of Sentences Received by Similarly Situated Defendants

In sentencing Mr. Naji, this Court is instructed to consider, among other things, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. See 18 U.S.C. § 3553(a)(6). A review of the sentences that are generally imposed in attempted material support cases across the country demonstrates that individuals convicted of the same offense as Mr. Naji largely receive sentences at or below 10 years.

As a starting point, from September 2001 through July 2007, 108 defendants were charged with at least one count of violating 18 U.S.C. § 2339B.[1] Thirty of those defendants proceeded to sentencing.[2] The mean sentence of these thirty defendants was either 122.73 months or 118.73

---

[1] See Robert Chesney, *Federal Prosecution of Terrorism-Related Offenses: Conviction and Sentencing Data in Light of the "Soft Sentence" and "Data Reliability" Critiques*, 11 Lewis and Clark L. Rev. 851, 884 (2007) ("Chesney Analysis"), available at http://bit.ly/1R4Hf9H

[2] See Chesney Analysis at 885.

months.[3] For the 23 defendants who entered guilty pleas, the mean sentence was either 107.91 months or 102.70 months.[4] For the 12 defendants who specifically pleaded guilty to conspiracy to provide material support – the mean sentence was 82.83 months.[5] And in 2012, the United States Sentencing Commission reported that the mean sentence imposed between 2008 and 2012 for providing material support to designated foreign terrorist organizations or for terrorist purposes was 111 months, a calculation that makes no distinction between defendants who pled guilty and those who were convicted after trial.[6] It is worth noting that the statutory maximum for these cases was fifteen years; however, it does not follow that now that the statutory maximum has been raised to twenty years, that the sentences imposes have increased as well.

Most recently, in 2016, the Center on National Security at Fordham Law School released a report analyzing the first 101 ISIS-related cases to proceed in U.S. Courts. Of the 14 defendants who had been sentenced at the time the report was issued, the mean sentence received was 9.2 years.[7] Since that report was issued, at least 29 more defendants listed in the report have been sentenced, raising the total number sentenced to 43.

---

[3] *See* Chesney Analysis at 886, T.7. Two means are calculated because some defendants received different sentences on two separate counts of violating 2339B. The first mean is calculated using the high sentence; the second is calculated using the low sentence. *Id.*

[4] *See* Chesney Analysis at 886, T. 8.

[5] *See* Chesney Analysis at 888.

[6] *See* United States Sentencing Commission, *Quick Facts: Offenses Involving National Defense* (2012), at p. 2, available at http://bit.ly/1HkM5xv

[7] See *Case by Case: Isis Prosecutions in the United States, March 1, 2014 – June 30, 2016*, Center on National Security at Fordham Law School, available at http://www.centeronnationalsecurity.org/research

The mean sentence of all 43 defendants is 10.5 years – one-half the sentence recommended in the PSR.

Finally, we conducted our own review of attempted material support cases under 18 U.S.C. § 2339B in all circuits, as well as material support conspiracy cases when the offense conduct was comparable to the conduct for which Mr. Naji was convicted, namely, traveling or taking substantial steps toward travel overseas, with a goal of joining ISIL or another designated foreign terrorist organization. Of the 22 such cases we identified, three involve defendants who cooperated with the government. For this reason, we excluded their sentences from our calculations. Among the remaining 18 defendants, the mean sentence was 133.8 months, or a little more than 11 years, with 50% (9 out of 18) defendants receiving sentences of 10 years or less, 5 receiving sentences between 11 and 13 years, and 4 receiving sentences of 15 years. Further, among the 4 who received 180-month sentences – only two received the statutory maximum. (*See Table A-1*; Attempted Material Support Cases, All Circuits.)

A survey of the alleged conduct in these cases, discussed below, demonstrates that a sentence far below the guidelines for Mr. Naji is sufficient, but not greater than necessary to meet the goals of sentencing under 18 U.S.C. §3553(a).

## Cases Surveyed

1. *U.S. v. Mohamed Bailor Jalloh*, 16 Cr. 163, Eastern District of Virginia, February 10, 2017. Mr. Jalloh, age 26, made several attempts to join ISIL; the first, in his native Sierra Leone, where he met with an ISIL facilitator, the second in Niger where he met with

the same facilitator. He also provided money to a facilitator, to another ISIL figure plotting attacks on the U.S., participated in a plot to murder U.S. military personnel, and purchased an AR-15 for that purpose. *Mr. Jalloh pled guilty to one count of attempted material support under 18 U.S.C. § 2339B and was sentenced by Judge Liam O'Grady to 132 months (11 years) in prison. He faced a maximum of 20 years.*

2. *U.S. v. Joshua Van Haften*, 15 Cr. 37, Western District of Wisconsin, February 17, 2017. Mr. Van Haften, age 36, was arrested on his way to Syria to join ISIS. Federal anti-terrorism agents were tracking the defendant for some time, before immigration officials caught him in Turkey in 2014. He was sent back to the U.S., where he was arrested at Chicago's O'Hare Airport. Some of the evidence against him includes an online post swearing allegiance to ISIS, saying "the only thing that matters to me is joining my brothers for the war against America liars." *Mr. Van Haften pleaded guilty to one count of attempted material support under 18 U.S.C. § 2339B and was sentenced by Judge James D. Peterson to 120 months (10 years) in prison. He faced a maximum of 15 years.*

3. *U.S. v. Justin Kaliebe*, 13 Cr. 72, Eastern District of New York, January 20, 2016. Mr. Kaliebe, age 18, attempted to travel from the United States to Yemen for the purpose of joining AQAP and waging violent "jihad." The defendant was arrested on January 21, 2013 as he attempted to board a flight from John F. Kennedy Airport ("JFK Airport") in Queens, New York to the Middle East for the purpose of joining AQAP. Evidence included frequent meetings with undercover

agents in which he expressed this intent. *Mr. Kaliebe pled guilty to two counts of attempted material support under 18 U.S.C. § 2339B and was sentenced by Denis R. Hurley to 156 months (13 years) in prison, though he faced a maximum of 30 years.*

4. *U.S. v. Joseph Hasan Farrokh*, 16 Cr. 64, Eastern District of Virginia, July 15, 2016. Mr. Farrokh, age 29, conspired with co-defendant Mahmoud Amin El Hassan to travel to Syria to join and fight for ISIL. Farrokh and Elhassan had numerous communications, using secure apps, about their plans. Farrokh was arrested as he went down the jet way to catch his flight. *He pled guilty to one count of attempted material support under 18 U.S.C. § 2339B and was sentenced by Judge Anthony J. Trenga to 102 months (8.5 years) in prison. He faced a maximum of 20 years.*

5. *U.S. v. Mahmoud Elhassan,* 16 Cr. 64, Eastern District of Virginia, February 24, 2017. Mr. Elhassan, age 25, recruited co-defendant Joseph Farrokh to join the Islamic State and aided his efforts to travel to Syria and Iraq to join the terrorist organization. The government believed he planned to join Farrokh at a later date or to continue to operate as a sleeper cell supporting the cause remotely. Mr. *Elhassan pled guilty to attempted material support under 18 U.S.C. § 2339B and to 18 U.S.C. 1001 for making false statements to the FBI about his conduct and was sentenced by Judge Anthony J. Trenga to 132 months (11 years) in prison. He faced a maximum of 28 years.*

6. *U.S. v. Alaa Saadeh*, 15 Cr. 558, District of New Jersey, May 10, 2016. Mr. Saadeh, age 24, planned to travel overseas to join, and fight for, ISIL. The defendant also helped his brother successfully travel overseas for the same purpose, letting him purchase airline tickets using Saadeh's credit card, removing the SIM card from his brother's smartphone and resetting the smartphone in an effort to avoid detection, and giving his brother contact information for an individual who would facilitate his travel from Turkey to ISIL in Syria. *Mr. Saadeh pled guilty to material support under 18 U.S.C. § 2339B and was sentenced by Judge Susan Wigenton to 180 months in prison (15 years). He faced a maximum of 20 years.*

7. *U.S. vs. Nicholas Teausant*, 14 Cr. 87, Eastern District of California, June 7, 2016. Mr. Teausant, age 20, was apprehended at the Canadian border allegedly on his way to join ISIS in Syria, after authorities saw posts he made on social media sites about his desire to conduct violent jihad. *Mr. Teausant pled guilty to attempted material support under 18 U.S.C. § 2339B and was sentenced by Judge John A. Mendez to 144 months (12 years) in prison. He faced a maximum of 15 years.*

8. *U.S. v. Zacharia Yusuf Abdurahman*, 15 Cr. 49, District of Minnesota, November 14, 2016. Mr. Abdurahman, age 19, and three other men (Hanad Musse, Hamza Ahmed, and Mohamed Farah)—took a Greyhound bus from Minneapolis to New York in November 2014 and were stopped by federal agents as they tried to travel overseas from JFK Airport. Prosecutors said they were part of a group of friends who began inspiring and recruiting each other to join

the Islamic State group in the spring of 2014. Some of their friends made it to Syria, but the nine who were prosecuted did not. Three went to trial and were convicted of a conspiracy to commit murder outside of the United States in addition to material support, receiving lengthier sentences. *Mr. Abdurahman and three others did not cooperate, pleading guilty to conspiring to provide material support under 18 U.S.C. § 2339B. Mr. Abdurahman and two others (Hanad Musse, age 19 and Adnan Farah, age 19) were sentenced by Judge Michael J. Davis to 120 months (10 years) in prison. All three faced maximums of 15 years. The fourth, Hamza Naj Ahmed, age 21, was charged with an additional count of financial aid, and was sentenced to 180 months (15 years) in prison. Mr. Ahmed faced a maximum of 20 years.*

9. U.S. v. Jaelyn Young, 15 Cr. 98, Northern District of Mississippi, August 12, 2016. Jaelyn Young, age 19, an American from Vicksburg, Mississippi, attempted to move to Syria with her fiancé Mohammad Dakhlalla, age 22, to join ISIS to work as a medic. Ms. Young and Mr. Dakhlalla engaged in numerous conversations on social media sites with FBI agents disguised as ISIS recruiters. They were apprehended on their way to the airport, and pled guilty to conspiring to provide material support under 18 U.S.C. § 2339B. *Ms. Young who admitted to being the mastermind of the plan, was sentenced by Judge Sharion Aycock to 144 months (12 years) in prison. Mr. Dakhlalla was sentenced to 96 months (8 years). Both faced maximums of 15 years.*

10. *U.S. v. Adam Dandach*, 14 Cr. 109, Central District of California, July 25, 2016. Mr. Dandach, age 22, was initially charged with falsely claiming he lost his passport, and later indicted for attempting to travel to Syria to support terrorists. Mr. Dandach communicated with two people in Syria, and made two attempts to travel and join ISIL; the first time, a family member took his passport and money so he couldn't go; the second time, he obtained a duplicate expedited passport. Mr. Dandach also engaged in post-arrest obstruction - seeking his family's help in deleting internet postings. And while detained, he composed several pro-terror writings. *He pled guilty to attempted material support under 18 U.S.C. § 2339B and making a false statement on a passport application under 18 U.S.C. § 1542, and was sentenced by Judge James V. Selna to 180 months (15 years) in prison. Mr. Dandach faced a maximum of 25 years.*

11. *U.S. v. Rahatul Khan*, 14 Cr. 212, Western District of Texas, September 25, 2015. Between March 2011 and January 2012, Mr. Khan, age 24, identified an individual in an Internet chatroom and began assessing that individual for overseas violent jihadist travel. That individual was actually an FBI confidential source. After Khan screened the confidential source, he made arrangements to insert him into an al-Shabaab pipeline. Khan also led a group of individuals in the Austin area who pledged loyalty to the now-deceased Taliban and terrorist leader, Mullah Omar. Michael Wolfe, whose case is discussed below, was a part of Khan's group. *Mr. Khan pled guilty to attempted material support under 18 U.S.C. § 2339B and was*

*sentenced by Judge Sam Sparks to 120 months (10 years) in prison. He faced a maximum of 15 years.*

12. U.S. v. Michael Wolfe, 14. Cr. 213, Western District of Texas, June 5, 2015. Mr. Wolfe, age 23 attempted to travel to the Middle East to lend his support to ISIL. He admitted at his change of plea hearing that in preparation, he applied for and acquired a U.S. passport, participated in physical fitness training, practiced military maneuvers, concealed his preparations, and bough an airline ticket for travel to Europe, which he believed would be the first leg of a trip to the Middle East. Instead, he was arrested on the jet way at the Houston, Texas airport as he attempted to board a flight to Toronto, Canada. *Mr. Wolfe was part of a group led by Mr. Khan (see above) that pledged loyalty to a deceased Taliban leader. He pled guilty to attempted material support under 18 U.S.C. § 2339B and was sentenced by Judge Sam Sparks to 82 months (6 years, 10 months) in prison. He faced a maximum of 15 years.*

13. U.S. v. Leon Nathan Davis, 15 Cr. 59, Southern District of Georgia, July 28, 2015. Mr. Davis, age 37, was arrested at the Hartsfield-Jackson Atlanta International Airport as he attempted to board a flight to Turkey. The defendant had been under investigation for more than a year before he was arrested, after communicating with ISIL members via social media. At the time of his arrest, Mr. Davis was on parole for cocaine trafficking. Mr. Davis was initially charged with possession of illegal firearms by a convicted felon, and reportedly had six rifles, four handguns, and two shotguns, but that charge was later dropped. *He pled guilty to attempted material*

> *support under 18 U.S.C. § 2339B and was sentenced by Judge J. Randall Hall to 180 months (15 years), the maximum.*

Like Mr. Naji, the vast majority of these defendants likely faced Guidelines ranges of 360-life, absent statutory maximums that cap a defendant's exposure. Notably, however, the vast majority received sentences that were significantly lower than the statutory maximum. This pattern suggests that these cases, as a group, fall well outside the heartland of cases to which the Terrorism Enhancement was intended to apply. Or perhaps it suggests something else; namely, that no such heartland exists, and the Sentencing Commission's wholesale failure to develop this Guideline based upon empirical data, national experience, or some rational policy basis, has rendered it essentially meaningless.

At 40, Mr. Naji is older than the defendants whose cases are analyzed above. Like Mr. Naji, the above defendants were sentenced after guilty pleas. At 40, he poses an ever-decreasing risk of recidivism. A look beneath the surface demonstrates that a sentence below the 10-12 year range received by the majority of the defendants above is appropriate here.

First, Mr. Naji, at age 40, had no criminal record, and spent decades in meaningful, productive, law-abiding work. The absence of a criminal record at age 40 is more significant than it is at age 19 or 20, because it demonstrates the complete aberrance of the offense for which Mr. Naji in the context of the rest of a long and productive life.

More egregious, is the imposition of a Criminal History Category of VI – notwithstanding that Mr. Naji has no criminal history points (PSR ¶¶

45)

Support for Mohamed Naji

Attached to this submission, as Exhibit A, are two letters of support.

In a letter from Mr. Naji's sister-in-law Zakhia Ali, Ms. Ali writes that, "Mohamed has inspired me to become a strong, independent, honest, hard-working woman." She continues, "He has guided me to try my best to stay on the right path in life, to avoid drugs, drinking, sex, stealing." Ms. Ali posits that life is full of its mysteries – but of one thing she is certain – that after three years at the MDC, where Mr. Naji has truly experienced a loss of his freedom – from the freedom to move freely, to the freedom to choose his food, or his clothing – that he will do everything in his power to never put himself in harm's way again. Ms. Ali wisely observes that "We, humans, are all a work in progress, with time and experience we become wiser and better versions of ourselves…" She writes that she believes that Mr. Naji is making strides to improve himself – so that he will never find himself in this sort of compromised position again.

A second letter from another of Mr. Naji's sisters-in-law, Zeba Ali, describes Mr. Naji as, "genuine, honest, calm and a sincere person, one of true character," and reports that he is deeply remorsefully for the choices he made in connection with his current dilemma. Importantly, Ms. Zeba Ali comments that Mr. Naji is deeply remorseful for his actions and with the support of his family, he intends to be able to put this difficult chapter behind him and move forward with a renewed sense of family and pride.

Work Performance Review

Additionally, attached to this submission as Exhibit B, is a BOP "Work Performance Rating" sheet. Since he has been incarcerated at the MDC, Mr. Naji has had no disciplinary actions taken against him and he has worked steadily. In his performance review, his BOP supervisor writes, "Inmate does a full days works and Goes (sic) above and beyond his assigned job description. Mohamed also gives input on how to do things better, safer and more efficiently. He drives himself exceptionally well. Inmate Naji...is always willing to take on additional duties. Mohamed works well with staff and other inmates." Additionally, Mr. Naji is rated "Outstanding" in every aspect of his work – including: (A) quality of work; (B) quantity of work; (C) initiative; (D) interest and eagerness to learn; (E) ability to learn; (F) requires no supervision – "completely dependable in all things"; (G) makes great effort to please his instructor – does exactly what he is told; (H) gets along with everyone; (I) has earned a promotion to a job with more responsibility and greater pay. His performance review is annexed as Exhibit B.

The War In Yemen

It is not the purpose of this sentencing submission – or this paragraph – to justify or excuse Mr. Naji's conduct in connection with his attempt to provide material support to a terrorist organization. Instead, Exhibit C, which contains photographs from the streets of Yemen, are including in this submission as a means of providing the Court with context for Mr. Naji's state of mind – as he attempted to provide some modicum of protection for his wife and three young children.

Appropriate Sentence

It is respectfully submitted that the price of Mr. Naji's criminal conduct has been exacted by the loss of his liberty, his home, his family and the freedoms available here in the United States that will not be available to him when he is returned to Yemen. Three years at the MDC is an extremely high price to pay for a man who has voluntarily admitted that he attempted to offer material support to a terrorist organization, given that upon the completion of his sentence – whatever this court may decide – at the end of the day – Mr. Naji will likely be sent back to the war-torn country of his birth.

For all of the reasons articulated above, we respectfully request that your Honor reject the Probation Department's recommendation of a twenty-year sentence – a sentence that fails to reflect his acceptance of responsibility, the responsible life he lived prior to his involvement in the instant offense, the diminished possibility of him ever putting himself or his family in harm's way again – and the very real possibility that he will be sent back to Yemen – where war, death and famine are a daily occurrence – and impose a sentence substantially below the maximum sentence permitted by law – a sentence that should be reserved for the worst offenders – and there are far worse offenders than Mr. Mohamed Naji.

                    Respectfully submitted,

                    /s/

                    Susan G. Kellman
                    Gary Villanueva

cc:    All Counsel via ECF and email

USPO Ross Kapitansky

Mohamed Rafik Naji